[No. S098895. Feb. 20, 2003.]

FRANCISCO COLMENARES, Plaintiff and Appellant, v.
BRAEMAR COUNTRY CLUB, INC., Defendant and Respondent.

## COUNSEL

Law Offices of Joseph M. Lovretovich, Joseph M. Lovretovich, Christopher W. Olmsted; Disability Rights Education & Defense Fund, Linda D. Kilb and Arlene B. Mayerson for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Richard M. Frank, Chief Assistant Attorney General, Louis Verdugo, Jr., Assistant Attorney General, Catherine Z. Ysrael and Phyllis W. Cheng, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiff and Appellant.

Eve L. Hill and Paula D. Pearlman for Western Law Center for Disability Rights as Amicus Curiae on behalf of Plaintiff and Appellant.

Littler Mendelson, Jody A. Landry, Kristin M. Stockholm and Alan S. Levins for Defendant and Respondent.

Gutierrez, Preciado & House, Calvin R. House; Greines, Martin, Stein & Richland, Martin Stein and Alison M. Turner for County of Los Angeles as Amicus Curiae on behalf of Defendant and Respondent.

Pillsbury Winthrop, Shawn Hanson and Katherine S. Ritchey for Standard Insurance Company as Amicus Curiae on behalf of Defendant and Respondent.

Pillsbury Winthrop and George S. Howard, Jr., for the Employers Group and the California Employment Law Council as Amici Curiae on behalf of Defendant and Respondent.

The Legal Aid Society—Employment Law Center, Claudia Center and Patricia A. Shiu for Patrice L. Goldman as Amici Curiae.

## OPINION

**KENNARD, J.**—The Fair Employment and Housing Act (FEHA) prohibits employment discrimination based on a physical disability. (Gov. Code, § 12940, subd. (a);[1] see *Esberg v. Union Oil, Co.* (2002) 28 Cal.4th 262, 267 [121 Cal.Rptr.2d 203, 47 P.3d 1069].) In 1997, defendant Braemar Country Club (Braemar) terminated plaintiff Francisco Colmenares, who had been in its employ for 25 years. Colmenares sued, alleging in part discrimination based on physical disability (a bad back), in violation of the FEHA. (§ 12900 et seq.) In May 2000, the trial court granted Braemar's motion for summary judgment on the basis that Colmenares had failed to make a prima facie showing of physical disability. Colmenares appealed.

On January 1, 2001, while the case was before the Court of Appeal, the Prudence Kay Poppink Act (Poppink Act) took effect. The Poppink Act states that "under the law of this state" a person is physically disabled when he or she has a physiological condition that "*limits* a major life activity" (§ 12926, subd. (k)(1)(B)(i), italics added). In contrast, federal law requires that a disability "*substantially limits* one or more . . . major life activities" of an individual. (42 U.S.C. § 12102(2)(A), italics added; 29 C.F.R. § 1630.2(g) (2002).) The Court of Appeal refused to apply the Poppink Act to Colmenares because his termination preceded its effective date and at the

---

[1]Unless otherwise indicated, further undesignated statutory references are to the Government Code.

time of termination, according to the Court of Appeal, the FEHA applied the federal law's narrower definition of physical disability. Because Colmenares had conceded that his back injury did not *substantially* limit his ability to perform his job, the Court of Appeal concluded that he could not establish a claim for disability discrimination. The Court of Appeal affirmed the trial court's judgment.

Two months later, another division of the same Court of Appeal decided *Wittkopf v. County of Los Angeles* (2001) 90 Cal.App.4th 1205, review granted October 10, 2001, S103311. There, as here, the plaintiff's claim of discrimination based on physical disability arose before the January 1, 2001, effective date of the Poppink Act. Disagreeing with the Court of Appeal here, the *Wittkopf* court held that to come within the FEHA's definition of physical disability a plaintiff need only show that the physical impairment limits a major life activity. *Wittkopf* noted that both before and after the Poppink Act the FEHA's definition of physical disability requires only a mere limitation and not a substantial one. Therefore, *Wittkopf* held that the Poppink Act had merely clarified existing law on the degree of limitation required and the statute as clarified has no true retrospective effect. We granted review to resolve the conflict between *Wittkopf* and the Court of Appeal's decision in this case.

## I.

We recite the facts as set out in the record before the trial court when it granted defendant's motion for summary judgment. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65-66 [99 Cal.Rptr.2d 316, 5 P.3d 874].) In 1972, plaintiff Colmenares began working for defendant Braemar as a general laborer. In 1981, Colmenares injured his back at work. Thereafter, under doctor's orders, Colmenares was given only light duties. In 1982, Braemar promoted him to foreman in charge of a golf course maintenance crew, a position that took his physical limitations into consideration. Performance reviews for Colmenares from 1986, 1987 and 1990 rated his performance as good, and he received raises. Beginning in 1995, a new supervisor began giving Colmenares unfavorable performance reviews. In July 1997, Braemar reassigned Colmenares from supervising a course maintenance crew to supervising a clubhouse construction project that involved heavy labor. In September 1997, Braemar fired Colmenares for "deficiencies in his work performance."

In December 1997, Colmenares filed an administrative complaint with the Department of Fair Employment and Housing, alleging that in 1995 Braemar began requiring him to perform "heavier work" and two years later fired him

because of his bad back. Having exhausted his administrative remedies, Colmenares in March 1999 filed a complaint in superior court alleging, as here relevant, that his termination violated the FEHA because it was based on his physical disability, namely, a "chronic back injury."

Braemar moved for summary judgment on the ground that Colmenares had no "legally cognizable disability" because his back condition did not "substantially" limit a major life activity. Braemar relied on Colmenares's deposition testimony in which he conceded that his back condition did not *substantially* limit his ability to work as a foreman. Colmenares, however, argued that under the FEHA he need only establish *some* limitation, not the *substantial* limitation standard of federal law, of his ability to perform major life activities. (§ 12926, subd. (k)(1)(B); Cal. Code Regs., tit. 2, § 7293.6, subd. (c)(1)(A)(2).) The trial court disagreed, ruling that California followed federal law in requiring that a disability "substantially" limits major life activities. (42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(g)(1) (2002).) Finding that Colmenares had "fail[ed] to meet his burden" to produce evidence that his back condition substantially limited his work activities, the trial court granted Braemar's motion for summary judgment. Colmenares appealed.

The Court of Appeal affirmed. ▓▓▓▓ ▄ ▄ It construed the FEHA, before its amendment by the Poppink Act, as requiring the physical disability to *substantially* limit one or more major life activities (the test under federal law), and it held that the Poppink Act's broader standard, requiring only that the disability "limits a major life activity," could not be applied retrospectively to Colmenares, whose 1997 firing occurred before that act took effect on January 1, 2001.[2]

## II.

Since 1973 California has prohibited employment discrimination based on "physical handicap." (Stats. 1973, ch. 1189, § 6, p. 2501 [enacting Lab. Code, former § 1420]; see *Cassista v. Community Foods, Inc.* (1993) 5 Cal.4th 1050, 1056 [22 Cal.Rptr.2d 287, 856 P.2d 1143] (*Cassista*).) In

---

[2] When a statute "merely *clarifies*, rather than changes, existing law [it] does not operate retrospectively." (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507].) Even a material change in statutory language may demonstrate legislative intent only to clarify the statute's meaning. (*Ibid.*) If the legislative intent is to clarify, an amendment has "no retrospective effect because the true meaning of the statute remains the same." (*Ibid.*) Here, there was no change at all in the statutory language; section 12926 used the term "limits" before and after the Legislature's enactment of the Poppink Act. Thus, notwithstanding extensive briefing by the parties and by amici curiae on the retroactivity of the Poppink Act, it is analytically unnecessary here for us to address the retroactivity of that act.

1980, that prohibition and the definition of physical handicap to include "impairment of sight, hearing, or speech, or impairment of physical ability" were incorporated into the newly enacted FEHA. (Stats. 1980, ch. 992, § 4, p. 3144 [enacting Lab. Code, former § 1413, subd. (h)].) The FEHA did not define impairment. That same year, the Fair Employment and Housing Commission (FEHC), the entity charged with implementing the FEHA (§ 12935), adopted a regulation drawn from a federal regulation (45 C.F.R. § 84.3(j)(1) (1980)) implementing the federal Rehabilitation Act of 1973. (Pub. L. No. 93-112 (Sept. 26, 1973) 87 Stat. 357; 45 C.F.R. § 84, Appen. A (1992).) Instead of defining "impairment," the term used in the California statutes (first in the Labor Code and then in the FEHA), the FEHC's 1980 regulation embraced federal law and defined "physical handicap" as a condition that "substantially limits one or more major life activities." (Former Cal. Admin. Code, tit. 2, § 7293.6, subd. (j)(1).)

In 1990, Congress enacted the Americans with Disabilities Act (ADA). (42 U.S.C. § 12101 et seq.) In 1992, the California Legislature significantly amended the FEHA. Among other things, it substituted the term "physical disability" for "physical handicap" (former § 12920, as amended by Stats. 1992, ch. 913, § 19, p. 4297), and it generally modeled the definition of "physical disability" (former § 12926, subd. (k), as amended by Stats. 1992, ch. 913, § 21.3, p. 4308) on that in the ADA. (See *Cassista, supra,* 5 Cal.4th at pp. 1059-1060.) As relevant here, there was one notable difference between the FEHA and the ADA: While the federal act described a disabled individual as one whose disability "*substantially limits* one or more major life activities" (42 U.S.C. § 12102(2)(A), italics added), the 1992 amendment to the FEHA defined physical disability as an impairment that merely "[*l*]*imits* an individual's ability to participate in major life activities." (Stats. 1992, ch. 913, § 21.3, p. 4308, amending § 12926, subd. (k), italics added.) That definition, the Legislature stated at the time of the 1992 amendment to the FEHA, "shall have the same meaning as the term 'physical handicap' . . . construed in American National Ins. Co. v. Fair Employment & Housing Com. [(1982)] 32 Cal.3d 603 [186 Cal.Rptr. 345, 651 P.2d 1151]." (Stats. 1992, ch. 913, § 21.3, p. 4308.) There, this court held that a physical handicap was not confined to a major physical ailment or defect; instead, we construed "physical handicap" to be "a condition of the body" that has the "disabling effect" of making " 'achievement unusually difficult.' " (*American National Ins. Co. v. Fair Employment & Housing Com., supra,* 32 Cal.3d at p. 609.)

When the 1992 Legislature made the just-described amendments to the FEHA, it also amended various *non-FEHA* statutes by defining "disability" in those statutory schemes using the more stringent federal test of "substantial limits." Thus, it inserted the federal definition of disability, including the

requirement that a disability must substantially limit a major life activity, into provisions prohibiting disability discrimination by and against holders of state-issued occupational or professional licenses (Bus. & Prof. Code, § 125.6), by business establishments providing accommodations, facilities and services and subject to the Unruh Civil Rights Act (Civ. Code, § 54), by entities employing, training or credentialling teachers (Ed. Code, § 44337), by any state-funded program (Gov. Code, § 11135), and with respect to state civil service employment (Gov. Code, § 19231). (Stats. 1992, ch. 913, §§ 2, 4, 12, 18, 28, pp. 4283, 4286, 4293, 4297, 4328.) These changes were consistent with the 1992 Legislature's stated intent "to strengthen California law where it is weaker" than the ADA, that is, in the non-FEHA statutes, "and to retain California law when it provides more protection for individuals with disabilities than" the ADA, that is, in the FEHA. (Stats. 1992, ch. 913, § 1, p. 4282.)

Notwithstanding the Legislature's 1992 amendment of the FEHA to specify that physical disability required only a limitation, as opposed to the federal law's *substantial* limitation, of a person's ability to participate in major life activities, the FEHC did not immediately replace its 1980 *regulatory* definition of physical disability modeled on the federal law's more stringent definition. (Former Cal. Admin. Code, tit. 2, § 7293.6, subd. (j)(1), Register 80, No. 25 (June 21, 1980); former Cal. Admin. Code, tit. 2, § 7293.6, subd. (i)(1), Register 86, No. 45 (Nov. 8, 1986); former Cal. Admin. Code, tit. 2, § 7293.6, subd. (i)(1), Register 88, No. 18 (Apr. 30, 1988).)[3] Not until September 1995 did the FEHC adopt a regulation that conformed to the Legislature's 1992 amendment of the FEHA. The 1995 regulation incorporated by reference the statutory definition of physical disability (Cal. Code Regs., tit. 2, § 7293.6, subd. (a)(1)) and defined a physically disabling disease or condition as one that "[l]imits an individual's ability to participate in major life activities." (Cal. Code Regs., tit. 2, § 7293.6, subd. (e)(1)(A)(2).) In this case, Colmenares's dismissal occurred in 1997.

In September 2000, the Legislature enacted the Poppink Act, which took effect on January 1, 2001. As relevant here, the act amended the FEHA's definition of physical disability. (§ 12926, subd. (k), as amended by Stats. 2000, ch. 1049, § 5.) The FEHA, in section 12926, subdivision (k), had previously provided that a " '[p]hysical disability' includes . . . [h]aving" a "disease, disorder, condition, cosmetic disfigurement, or anatomical loss" (hereafter disease or condition) that both "[a]ffects one or more" of certain

---

[3]We take judicial notice of these regulations at plaintiff's request. (Evid. Code, § 451, subd. (b).)

enumerated "body systems" and "[l]imits an individual's ability to partici-
pate in major life activities." (Stats. 1992, ch. 913, § 21.3, pp. 4307-4308.)
The Poppink Act changed the FEHA's requirement that a physical disease or
condition limit "major life activities" to the singular "a major life activity."[4]
The act explained that such a qualifying disease or condition "limits a major
life activity if it makes the achievement" of the activity "difficult."[5]
(§ 12926, subd. (k)(1)(B)(ii).)

Of particular relevance here is that the FEHA in section 12926 used the
term "limits," not the federal law's "substantially limits" language, *before
and after* its amendment by the Poppink Act. In this regard, the act declared:
"[T]he Legislature has determined that the definition[] of 'physical disabil-
ity' . . . under the law of this state require[s] a 'limitation' upon a major life
activity, but do[es] not require, as does the [federal ADA], a 'substantial
limitation.' This distinction is intended to result in broader coverage under
the law of this state than under that federal act." (§ 12926.1, subd. (c).)
Further, the Legislature declared that "[n]otwithstanding any interpretation
of law in Cassista v. Community Foods[, Inc.] (1993) 5 Cal.4th 1050," it
intended state law "to require a 'limitation' rather than a 'substantial limi-
tation' of a major life activity." (§ 12926.1, subd. (d).)

Not only did the Poppink Act of 2000 leave unchanged the "limits" test in
the FEHA, it also amended other, non-FEHA, statutes to delete the term
"substantial" from the limitation test these statutes had used since 1992.
Legislative committee analyses explained that the Poppink Act "standard-
izes" the definition of physical disability "in California civil rights laws,
*clarifying* that California's disability protections are broader than federal
protections." (Assem. Com. on Labor and Employment, Analysis of Assem.
Bill No. 2222 (1999-2000 Reg. Sess.) as amended Apr. 5, 2000, italics
added; accord, Assem. Com. on Appropriations, Analysis of Assem. Bill No.
2222 (1999-2000 Reg. Sess.) as amended Apr. 5, 2000.) Thus, the Poppink
Act *deleted* from the Unruh Civil Rights Act (Civ. Code, § 54, subd. (b)) and
from the state civil service scheme (Gov. Code, § 19231) the requirement
that a disability must *substantially* limit a major life activity, thereby con-
forming those statutes to the "limits" test of the FEHA. (Assem. Com. on
Labor and Employment, Analysis of Assem. Bill No. 2222 (1999-2000 Reg.
Sess.) as amended Apr. 5, 2000; State Personnel Bd., Bill Analysis of

---

[4]Because the issue is not before us, we express no opinion as to the significance of this
change in the statute's language.

[5]The Poppink Act also added these two provisions: "(i) 'Limits' shall be determined
without regard to mitigating measures such as medications, assistive devices, prosthetics, or
reasonable accommodations, unless the mitigating measure itself limits a major life activity.
[¶] . . . [¶] (iii) 'Major life activities' shall be broadly construed and includes physical,
mental, and social activities and working." (§ 12926, subd. (k)(B)(i) & (iii).)

Assem. Bill No. 2222 (1999-2000 Reg. Sess.) and related bill Sen. Bill No. 2025 (1999-2000 Reg. Sess.) Apr. 5, 2000; Civ. Code, §§ 51, subd. (e), 51.5, subd. (d), 54, subd. (b); Gov. Code, § 19231, as amended by Stats. 2000, ch. 1049, §§ 2-4 & 9.) ▮▮▮ This pattern of Legislative action compels our conclusion that in 2000 the Legislature intended not to make a retroactive change, but only to clarify the degree of limitation required for physical disability under the FEHA.

III.

Here, the Court of Appeal concluded that until January 1, 2001, when the Poppink Act took effect, California law protected as physically disabled only those "whose disabilities *substantially limited* a major life activity," the test under federal law. It reached that conclusion in reliance on certain language in our 1993 decision in *Cassista, supra,* 5 Cal.4th 1050. *Cassista* does contain language that, at first glance, appears to support the Court of Appeal's conclusion here. But a closer look reveals that the comment in question, made in passing, was unnecessary to resolve the issue in that case and therefore was mere dictum.

In *Cassista*, the plaintiff alleged that she was denied a job because of her obesity. (*Cassista, supra,* 5 Cal.4th at p. 1054.) The sole issue before this court was whether the plaintiff's obesity was a physical handicap or disability under the FEHA, which, as amended in 1992, required "a 'physiological' disorder that affects one or more of the basic bodily 'systems' *and* limits the claimant's ability 'to participate in major life activities.' " (At p. 1059, italics added.) Because the plaintiff had not offered any evidence that her obesity resulted from "a physiological condition or disorder affecting" a body system, the first of the two statutory requirements, we concluded that she did not meet the FEHA's definition of physical disability. (At p. 1066.) We did not address the second statutory requirement for disability, that is, the extent to which the plaintiff's ability to participate in major life activities must be impaired. When *Cassista* went on to comment on that requirement, its pronouncement became mere dictum, thus lacking in precedential force.

*Cassista* was decided in 1993, shortly after the Legislature in 1992 had significantly amended the FEHA by replacing the phrase "physical handicap" with "physical disability" and recasting the definition of "physical disability" (*ante,* at pp. 1024-1025). In describing the continuity between the statutory schemes before and after the 1992 amendment, *Cassista* stated that the definition of physical disability as amended in 1992 and the "long-standing interpretation of '[physical] handicap' " contained in the implementing regulations were "in harmony" because "[e]ach requires an actual or

perceived physiological disorder, disease, condition, cosmetic disfigurement or anatomical loss affecting one or more the body's major systems and *substantially limiting* one or more major life activities." (*Cassista, supra,* 5 Cal.4th at p. 1060, italics added.) This sentence is misleading; the statutory definition of physical disability enacted in 1992 did not require the physical limitation to be substantial.

The Court of Appeal here specifically relied on the italicized language from *Cassista* in holding that Colmenares was required to show that his back injury *substantially limited* his ability to work. But, as we have explained, that comment in *Cassista* was dictum: Not at issue in *Cassista* was the extent to which the plaintiff's ability to participate in major life activities must be impaired. ▉ " 'Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered.' " (*People v. Scheid* (1997) 16 Cal.4th 1, 17 [65 Cal.Rptr.2d 348, 939 P.2d 748], quoting *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)

A close look at *Cassista* reveals that in three other passages it accurately described physical disability under the FEHA as a condition that "limits," as opposed to "substantially limits," participation in major life activities. (*Cassista, supra,* 5 Cal.4th at pp. 1052, 1059, 1061.) Thus, by 1997 when Colmenares was fired, the law as described in *Cassista* required only that the physical condition limit, not substantially limit, participation in major life activities.

In 1995, the FEHC adopted a new regulation that tracked the language of the Legislature's 1992 amendment to the FEHA by defining "physical disability" as a physiological disease or condition that "affects" a body system and "[l]imits an individual's ability to participate in major life activities." (Cal. Code Regs., tit. 2, § 7293.6, subd. (e).) ▉ An agency invested with quasi-legislative power to adopt regulations has no discretion to promulgate regulations that are inconsistent with the governing statute, in that they " 'alter or amend the statute or enlarge or impair its scope.' " (*Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 300 [105 Cal.Rptr.2d 636, 20 P.3d 533].) By issuing new regulations in 1995, the FEHC brought its regulatory definition of physical disability into alignment with the FEHA's statutory definition, which had been in effect since January 1, 1993. ▉ We "give substantial weight to the FEHC's construction of the statutes under which it operates." (*Kelly v. Methodist Hospital of So. California* (2000) 22 Cal.4th 1108, 1118 [95 Cal.Rptr.2d 514, 997 P.2d 1169].)

Since adopting new regulations in 1995 that, among other things, mirrored the broad test of physical disability set forth in the Legislature's 1992 amendment to the FEHA (requiring limitation, not substantial limitation, of major life activities), the FEHC has applied that test in two precedential decisions. (*Dept. of Fair Empl. & Hous. v. Silver Arrow Express, Inc.* (1997) No. 97-12, FEHC Precedential Decs. 1996-1997, CEB 2, pp. 7-8, 11 [finding employer regarded as physically disabled an employee who had heart and back conditions that prevented him from lifting, pulling or pushing loads weighing over 25 pounds and thus *limited* his ability to participate in major life activities]; *Dept. of Fair Empl. & Hous. v. Seaway Semiconductor* (2000) No. 00-03-P, FEHC Precedential Decs. 2000-2002, CEB 1, pp. 15-16 & fn. 4 [finding to be physically disabled an employee who had a thyroid condition that limited her ability to participate in major life activities, which the FEHC described as a "less onerous standard than the federal definition" requiring that "an impairment '*substantially* limit' a major life activity"].)

The FEHC, authorized by the Legislature to issue precedential opinions (§ 12935, subd. (h)), publishes those decisions, making them available to the public as notice of its interpretation of the statutory scheme. (See *American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1025 [56 Cal.Rptr.2d 109, 920 P.2d 1314] [precedential decisions of Unemployment Insurance Appeals Board].) ▮ We presume the Legislature was aware that beginning in 1995 the FEHC was construing in its regulations, and applying in its precedential decisions, the FEHA's statutory definition of physical disability, as set forth in the 1992 amendment to the FEHA, to require only that a disabling condition limit (not substantially limit) the individual's participation in major life activities. (*Robinson v. Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 235, fn. 7 [5 Cal.Rptr.2d 782, 825 P.2d 767].) Thus, in 2000 when the Legislature passed the Poppink Act, which explained when a physical disability "limits" a major life activity under the FEHA (see *ante,* at pp. 1026-1027 & fn. 5), the Legislature knew that the FEHC, in implementing the FEHA, was already applying the "limits" test, which is broader than the federal "substantially limits" standard.

To summarize, when the Legislature in 1992 amended the FEHA, it defined physical disability as a physiological condition that "limits" major life activities. In 2000, when the Legislature passed the Poppink Act, which amended the FEHA, it retained that "limits" language. At that time, the Legislature clarified in express terms that a physical disability under the FEHA does *not* require the federal test's *substantial limitation* of a major life activity. (§ 12926.1, subd. (c).) Thus, before and after passage of the Poppink Act the FEHA's test was "limits," not substantial limits. Moreover, the

legislative history of the Poppink Act supports the view that the Legislature merely clarified the existing "limits" test in the FEHA and, contrary to the conclusion of the Court of Appeal here, did not retrospectively change that test. (*Western Security Bank v. Superior Court, supra,* 15 Cal.4th at p. 243 ["such a legislative act has no retrospective effect because the true meaning of the statute remains the same"].)[6]

## IV.

In petitioning for review, Colmenares raised a second issue: Did the trial court err in granting summary judgment in light of the evidence presented supporting Colmenares's allegations of disability discrimination and failure to accommodate? Braemar replies that even if the summary judgment was erroneously granted under the "substantial limitation" test, it was nonetheless entitled to summary judgment on an alternative ground it raised below.

■ An order granting summary judgment is reviewed de novo by the Court of Appeal (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116]), and therefore we remand the case to that court to determine whether summary judgment was proper on any ground advanced below by Braemar, which as the moving party bore the burden of persuasion on its motion for summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

*Conclusion*

■ We hold that in 1997, when Colmenares's cause of action for wrongful termination arose, a plaintiff seeking to establish physical disability under the FEHA had to show: (1) a physiological disease or condition affecting a body system; and (2) the disease or condition limited (as opposed

---

[6]We disapprove the following cases to the extent they hold or suggest the federal law's *substantial limitation* test applies to claims of physical disability brought under the FEHA: *Diffey v. Riverside County Sheriff's Dept.* (2000) 84 Cal.App.4th 1031, 1039-1040 [101 Cal.Rptr.2d 353] (holding that applicant for deputy sheriff who was unable to see the color red was not substantially limited in life activity of working, and, therefore, was not physically disabled under the FEHA); *Hobson v. Raychem Corp.* (1999) 73 Cal.App.4th 614, 629 [86 Cal.Rptr.2d 497] (holding that employee opposing a summary judgment motion who offered evidence of "only minor limitations" but not of substantial limitations, did not have a physical disability under the FEHA); *Muller v. Automobile Club of So. California* (1998) 61 Cal.App.4th 431, 442 [71 Cal.Rptr.2d 573] (asserting that in 1992 "the Legislature intended to conform California's employment discrimination statutes to the ADA"); *Pensinger v. Bowsmith, Inc.* (1998) 60 Cal.App.4th 709, 721 [70 Cal.Rptr.2d 531] (suggesting the substantial limitation test must be met to prove physical disability under the FEHA); and *Gosvener v. Coastal Corp.* (1996) 51 Cal.App.4th 805, 813 [59 Cal.Rptr.2d 339] (stating "a covered *disability* under the FEHA . . . incorporates the definition of disability listed in the Americans with Disabilities Act . . . .").

to substantially limited, as required under federal law) the plaintiff's ability to participate in major life activities.

The judgment is reversed, and the cause is remanded to the Court of Appeal for proceedings consistent with this opinion.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.