Filed 3/2/15  Perez v. Ricardo's on the Beach CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| AMADA PEREZ, | B250360 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC478325) |
| v. | |
| RICARDO'S ON THE BEACH, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge.  Affirmed in part, reversed in part and remanded.

Law Offices of Alvin L. Pittman and Alvin L. Pittman for Plaintiff and Appellant.

Snipper, Wainer & Markoff and Maurice Wainer for Defendants and Respondents.

_____

Plaintiff Amada Perez was employed by Dinah's Family Restaurant (Dinah's) as a waitress. In February 2012, she filed a wrongful termination action against Dinah's and its corporate owner, Ricardo's on the Beach, Inc. (Ricardo's, both Dinah's and Ricardo's shall be collectively referred to as defendants). Defendants' motion for summary judgment was granted in May 2013. Plaintiff appealed. We affirm in part and reverse in part, and remand to the trial court for further proceedings.

*FACTUAL & PROCEDURAL BACKGROUND*

The following facts are not disputed. Plaintiff began working part-time for Dinah's in 2001. In August 2010, she requested a leave of absence for medical reasons. When she called Dinah's and said she was ready to return in April 2011, she was told the only position available was an on-call position. Plaintiff accepted the on-call position and unsuccessfully applied for a regular position several times over the next few months. After plaintiff's attorney wrote a letter claiming Dinah's had wrongfully discharged plaintiff, Teri Ernst, an owner of Ricardo's and general manager of Dinah's, called plaintiff into her office, and ordered her to "leave," using profanity. Plaintiff left the restaurant and never returned to work.

Plaintiff filed a lawsuit against defendants, alleging causes of action for: (1) employment discrimination due to medical disability in violation of the Fair Employment and Housing Act (Gov. Code, § 12940, hereinafter referred to as FEHA)[1]; (2) failure to accommodate in violation of section 12926.1 and FEHA; (3) employment discrimination due to age in violation of FEHA; (4) retaliation for exercise of disability rights in violation of FEHA; and (5) wrongful termination in violation of public policy.

In February 2013, defendants filed a motion for summary judgment. They contended plaintiff was not legally disabled, was not subjected to any adverse employment action or was terminated for legitimate nondiscriminatory reasons, was not engaged in any protected activity, and was not actually or constructively terminated.

---

[1] All subsequent undesignated statutory references shall be to the Government Code.

2

Defendants submitted declarations, deposition testimony and responses to discovery requests to establish that: (1) plaintiff's surgery was not medically necessary, but was for cosmetic purposes; (2) plaintiff asked for one month leave of absence from her supervisor, Laura Craig; (3) plaintiff did not ask about returning to work until nine months later; (4) plaintiff did not tell defendants about any medical restrictions or request special accommodations; (5) when she returned, her assigned hours were comparable to the number she had worked before; (6) plaintiff repeatedly turned down on-call work assignments; and (7) plaintiff was not terminated by Ernst.

In opposition to the motion for summary judgment, plaintiff submitted her own declaration which stated she received a report of abnormal mammogram and decided to undergo surgery to have potentially cancerous breast tissue removed in 2010. She stated that she had a history of breast cancer in her family, and scar tissue from previous surgery caused pain in her breasts while wearing an apron or uniform. She was informed by her physician that the surgery was medically necessary. Before taking medical leave for surgery, she took a copy of her health-related documents to Laura Craig. She began a medical leave from work in August 2010. During her medical leave, defendants repeatedly assured her that when she was released to return to work, she would be reinstated to her former job. Although she had worked an average of 44 hours per two-week pay period in August 2010, when she returned she averaged only 26 hours per pay period.

While on leave, plaintiff was replaced in her job with Monica who was alleged to be "in her 20s." On two occasions, when permanent waitress positions became available, plaintiff re-applied but defendants hired younger waitresses, Samantha ("in her 20s"), and Alicia (age 30).

She alleged that Craig made discriminatory statements to her such as: "You are so old," "You are slow" and "You are a sorry ass Denny's waitress."

Plaintiff claimed she was actually and constructively discharged by Ernst because Ernst stated: "Get the fuck out of here," "I don't want to see your fucking face," and "Leave, leave, leave." Plaintiff stated that after the confrontation with Ernst, she "felt

3

threatened and terrified by Ernst's retaliatory actions" and, after returning to the restaurant service floor and being relieved for break, she left the workplace "as I felt I was directed to do by Ernst."

In reply, defendants' attorney stated in a declaration that he had examined plaintiff's timecards and paychecks and for the six full pay periods immediately before the August 2010 leave of absence, the average number of hours plaintiff worked was 43.48 hours. For the six full pay periods immediately after her May 2011 return, the average number of hours she worked was 46.21 hours. Defendants also submitted a copy of a letter written by Ernst dated December 21, 2011, in which she stated, "I met with you to discuss the letter and to understand how we can be accused of wrongful termination when you were actively employed. You had no explanation at that time and returned to work for approximately two hours. At the conclusion of those two hours, you left work and have not reported back since. [¶] By this letter I want to advise you that you will continue to be scheduled to work with Dinah's Restaurant. Your next scheduled shift, after receipt of this letter, will be December 26, 2011 at 1:45 p.m. . . . [¶] . . . [W]e want to make sure that you know that we have not terminated your employment and that you will continue to be scheduled to work. . . ."

*The trial court's order granting summary judgment*

On May 30, 2013, the trial court filed its order granting summary judgment.

The court ruled on defendants' objections to plaintiff's evidence, overruling all of them except one, plaintiff's statement: "Frustrated by Defendants' apparent discrimination against me, I sought legal assistance to oppose what I reasonably believed to be Defendants' discriminatory actions against me." The court sustained defendants' objection on the grounds that it was conclusory and irrelevant.

The court did not rule on plaintiff's objections because she did not file them separately as required by California Rules of Court, rule 3.1354.

In its order granting summary judgment, the court found there was no termination when plaintiff was not reinstated to her former position upon her return and she was not later terminated by Ernst. It found the confrontation with Ernst on December 13, 2011

4

was an isolated act and not an unusually aggravated condition causing plaintiff's situation to be intolerable. Thus, for plaintiff to resign was unreasonable as a matter of law. Because plaintiff was not terminated, there was no triable issue of fact as to whether she was subjected to an adverse employment decision when plaintiff's lawyer sent a letter to defendants. In addition, there could be no cause of action for wrongful termination in violation of public policy because plaintiff was not terminated.

The court found a dispute of fact as to whether plaintiff was disabled and the assignment to the on-call position was an adverse employment action but found no evidence that age was a reason for placing her on on-call status. The court further found that plaintiff did not show that defendants had discriminatory animus as to her disability. The evidence that the individuals hired for her position were younger did not establish a discriminatory motive because there was no evidence as to the qualifications of the younger employees. Plaintiff did not provide evidence of any remarks by Ernst regarding plaintiff's age and there was no other evidence establishing discriminatory animus on the part of Ernst. It found there was no dispute that defendants granted plaintiff's request for leave and had legitimate reasons for not reassigning plaintiff to her previous position.

A judgment of dismissal was entered on May 30, 2013.

*1. Summary judgment rules*

A trial court properly grants summary judgment or adjudication if there is no triable issue of material fact and the issues raised by the pleadings may be decided as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) To secure summary judgment or adjudication, a moving defendant must show that one or more elements of the cause of action cannot be established or that there is a complete defense to the cause of action. Once the moving defendant has met its burden, the burden shifts to the plaintiff to show that a triable issue of facts exists as to the cause of action or the defense thereto. (Code Civ. Proc., § 437c, subd. (o)(2); *Aguilar, supra*, 25 Cal.4th at p. 849.) We consider all evidence set forth in the moving and opposition papers except that to which objections have been made and

5

sustained and view the evidence in the light most favorable to the plaintiff. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534; *Aguilar, supra*, 25 Cal.4th at p. 843.)

We exercise our independent judgment in determining whether there are no triable issues of material fact and if the moving party is thus entitled to judgment or adjudication as a matter of law. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334-335.) We must uphold the judgment or adjudication if it is correct on any ground that the parties have had an adequate opportunity to address on appeal, regardless of the reasons the trial court gave. (*Bell v. H.F. Cox, Inc.* (2012) 209 Cal.App.4th 62, 71; Code Civ. Proc., § 437c, subd. (m)(2).)

### 2. *FEHA*

FEHA prohibits an employer from, inter alia, discrimination against an employee on the basis of specified criteria such as age, gender, or physical disability in compensation, terms, conditions or privileges of employment. (§ 12940, subd. (a).) The alleged discrimination must result in "adverse employment action." (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 374.)

A necessary element of a discrimination claim is a showing that the employer acted with discriminatory intent. A plaintiff must demonstrate that discrimination was a substantial motivating factor in the adverse employment action. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232.)

Because most discrimination claims must be proved by use of circumstantial evidence, California has adopted the three-step test set forth in *McDonnell Douglas Corp. v. Green* (1972) 411 U.S. 792 (*Harris v. City of Santa Monica*, *supra*, 56 Cal.4th at p. 214.) The plaintiff has the initial burden to make a prima facie case, generally establishing that (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the position sought or was performing competently in the position held; (3) plaintiff suffered an adverse employment action, such as termination, demotion, or denial of an available job; and (4) evidence of discriminatory motive. (*Guz v. Bechtel National, Inc., supra*, 24 Cal.4th at p. 355.) Once this prima facie case is established, there is a presumption of discrimination. The employer may rebut the presumption by producing

evidence that its action was taken for a legitimate, nondiscriminatory reason. If the employer meets this burden, the plaintiff must then show that the proffered nondiscriminatory reason was actually a pretext for discrimination and the plaintiff may offer any other evidence of discriminatory motive. *(Harris v. City of Santa Monica*, *supra*, 56 Cal.4th at p. 215, *Guz v. Bechtel National, Inc., supra*, 24 Cal.4th at pp. 354-356.)

### 3. First cause of action for disability discrimination

In a FEHA disability discrimination case, the plaintiff must establish "'he or she (1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability.' [Citation.]" (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 159-160.)

The employee must show "'that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.' [Citation.]" (*Johnson v. United Cerebral Palsy/Spastic Children's Foundation* (2009) 173 Cal.App.4th 740, 755.)

First we discuss whether plaintiff in fact had a disability. A plaintiff seeking to establish a physical disability under FEHA must show (1) a physiological disease or condition affecting a body system; and (2) that the disease or condition limited the plaintiff's ability to participate in major life activities. (*Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031-1032; § 12926, subd. (m) (formerly subd. (k)).)

Plaintiff stated in her declaration that she suffered debilitating pain, which caused her discomfort in wearing clothes, particularly her work uniform, and made it difficult for her to sleep at night. It is undisputed she had surgery on her breasts. This evidence is sufficient to create a triable issue of fact as to whether plaintiff was disabled.

### 4. *Reasonable accommodations*

FEHA requires an employer "to make reasonable accommodation" for an employee with a known mental or physical disability unless the employer demonstrates that the accommodation produces undue hardship. (§ 12940, subd. (m)). If the employee requests a reasonable accommodation, the employer is required to engage in a "timely, good faith, interactive process." (§ 12940, subd. (n).)

In order to show a failure to accommodate, the plaintiff must establish (1) a disability covered by FEHA; (2) he or she was qualified to perform the essential functions needed for the position; and (3) the employer failed to make a reasonable accommodation for the disability. (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1009-1010.)

First, as we discussed above, there is a question of fact as to whether plaintiff had a disability as provided by FEHA.

Plaintiff contends the failure to accommodate was defendants' failure to reinstate her in her former position as a "regular" employee and placing her instead "on-call."

If the disabled employee cannot "be accommodated in his or her existing position and the requested accommodation is reassignment, an employer must make affirmative efforts to determine whether a position is available. [Citation.] A reassignment, however, is not required if 'there is no vacant position for which the employee is qualified.' [Citations.]" (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1223.) "The employer is not required to create new positions or 'bump' other employees to accommodate the disabled employee." (*McCullah v. Southern Cal. Gas Co.* (2000) 82 Cal.App.4th 495, 501.)

"The obligation to reassign a disabled employee who cannot otherwise be accommodated does 'not require creating a new job [or] moving another employee, . . .' What is required is the 'duty to reassign a disabled employee if an already funded, vacant position at the same level exists.' [Citations.]" (*Hastings v. Department of Corrections* (2003) 110 Cal.App.4th 963, 972-973; italics omitted.)

At oral argument, counsel for plaintiff argued that the reason proffered by defendants for not giving her a "regular" waitress position was not included in defendants' moving papers for summary judgment. She claims they did not raise the issue of her turning down shifts until they filed their reply memorandum of points and authorities and thus she had no opportunity to refute that reason. After examination of the pleadings, we have determined that defendants did mention the reason for denying plaintiff the regular position in their moving papers, but did not include it in their separate statement of undisputed facts.

In their initial summary judgment papers, defendants submitted the declaration of Ernst, in which she stated that plaintiff worked as a part-time waitress, and never a full-time waitress. Ernst stated that when plaintiff returned in May 2011, plaintiff was going to work an "on-call" position. Though she was on-call, plaintiff worked more hours than she worked before her leave. Within two or three months of plaintiff's return, Craig told Ernst that plaintiff turned down work on multiple occasions. When a "regular" position opened up in September 2011, plaintiff was not offered the job because of what Craig had told Ernst about plaintiff repeatedly turning down work.

Defendants also submitted Craig's declaration which stated she talked to Ernst about putting plaintiff back on schedule when she returned. Ernst decided to put plaintiff on an on-call status because "we had already gotten the other employees to cover the shift [plaintiff] had before she went out on leave." Craig stated that plaintiff did not object to being put on-call and in the months after plaintiff returned, plaintiff turned down shifts Craig offered her "about every other week."

However, these statements by Ernst and Craig were not included in the separate statement of undisputed facts. All that was included in the separate statement was plaintiff's assertion that Ernst gave plaintiff an on-call position because other people were now working her shift, but no one indicated to her why her hours were being reduced. Craig only told her that Ernst had ordered it. These statements were supported by plaintiff's deposition testimony and her answers to interrogatories.

Plaintiff contended in her opposition that she was only told she was too old or slow when she asked about the regular position. In her response to the separate statement of undisputed facts, plaintiff stated: "as reported by Laura Craig and confirmed by Ernst['s] statement to Plaintiff and her actions in filling vacancies, Ernst did not want Plaintiff back as an employee in a regularly scheduled work role." Plaintiff also disputed the number of hours she was assigned after her return.

Plaintiff submitted a declaration stating that when she returned to work in May 2011, Ernst told her she could be hired as an "on-call" waitress and that she could only work the days when hours were available. Plaintiff also stated that Ernst told her that "if there was a vacancy, [she] would be returned to a regular permanent work schedule."

The trial court found a dispute of fact as to whether the assignment to the on-call position was an adverse employment action. It also noted, however, that plaintiff did not dispute the explanation that she had repeatedly turned down work offered to her.

We conclude that although plaintiff did not specifically deny the statements made by Ernst and Craig about turning down work, she did offer her own version of their conversations, stating that Craig had only told her she would not get the regular position and that it had been Ernst's decision, without giving her a reason. Plaintiff's statements actually contradict defendants' assertions, and thus create a triable issue of material fact as to whether plaintiff was told the reason why she did not receive the job.

There are also triable issues of fact as to whether the position offered her when she returned was a similar position since it was only on an "on-call" basis. "A temporary position is not, however, a reasonable accommodation. It represents, like unpaid leave, a way to put a disabled employee on hold while the attempt to locate a permanent position is ongoing." (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 246, 264.) As the declarations establish, there is a dispute between the parties over how many hours plaintiff worked before and after her leave. Left unstated is what schedule plaintiff had before her leave and what kind of hours was she given when she returned. Without these facts, we cannot determine whether she was returned to the same job after her surgery.

10

There is also a triable issue of fact as to whether plaintiff could have filled the other positions which opened up subsequent to her return.

Plaintiff also claims defendants failed to engage in an interactive process in determining what accommodations she needed. The employee must put the employer on notice of the disability and there must be a mutual exchange of information and a duty to cooperate. (*A.M. v. Albertsons* (2009) 178 Cal.App.4th 455, 466.) Because plaintiff and defendants completely disagreed as to what was stated about placing plaintiff in a regularly scheduled position, this too is a triable issue of material fact. Therefore, summary judgment was not proper as to this cause of action.

5. *Age discrimination*

Plaintiff claims that defendants' discriminatory intent was evidenced by the hiring of younger employees, and the derogatory comments made by Craig, who said to her, inter alia, "You are so old."

This evidence, without anything more, fails to establish age discrimination. Plaintiff did not establish that the two younger employees who were hired had the same or inferior qualifications and fails to rebut the evidence presented by defendants that she refused several on-call assignments. Plaintiff did not present any evidence about the average age of the other waitresses or of all other waitresses hired after she returned from surgery. (*Iwekaogwu v. City of Los Angeles* (1999) 75 Cal.App.4th 803, 816.) Because Craig's statements were not linked to any adverse action, they constitute only weak circumstantial evidence of discriminatory animus or that intentional age discrimination was the true cause of defendants' actions. (*See Guz v. Bechtel National, Inc., supra*, 24 Cal.4th at pp. 361, 366-368.).

We conclude plaintiff failed to present "substantial responsive evidence" that the defendants' stated basis for refusing her a regular position were pretextual and motivated by a discriminatory animus of age-related bias.

*6. Retaliation*

An employer may not retaliate or otherwise discriminate against any person because "the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA.]" (§ 12940, subd. (h).)

To establish actionable retaliation under FEHA, plaintiff must show she engaged in a protected activity and defendants' adverse employment action (termination) was due to that protected activity. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042; *Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 651.)

Plaintiff claims defendants retaliated because she exercised her disability rights and took a medical leave. Plaintiff also contends that defendants further retaliated against her after her return because she had consulted a lawyer.

First, we address whether any adverse employment action was taken against plaintiff. Plaintiff contends she was constructively discharged because Ernst yelled at her on one occasion, telling her to "Leave, leave, leave."

The problem with this argument is that it is undisputed that Ernst sent a letter to plaintiff immediately after this confrontation, informing plaintiff she was not terminated, and informing her of her next scheduled shift. Nevertheless, plaintiff made the decision not to return.

Based on these undisputed facts, we find that Ernst's remarks were a one-time isolated incident and were immediately clarified or rectified by the letter she sent to plaintiff. Thus, plaintiff was not constructively discharged. Because there was no adverse employment action which resulted from the exercise of plaintiff's disability rights, there is no triable issue of fact on the retaliation cause of action.

*7. There was no violation of public policy because plaintiff was not terminated*

Plaintiff's fifth cause of action is for wrongful termination in violation of public policy.

12

Because we conclude that plaintiff was not terminated, the trial court did not err in granting summary judgment on plaintiff's fifth cause of action for wrongful termination in violation of public policy.

*DISPOSITION*

The judgment is affirmed in part and reversed in part. The trial court is ordered to vacate the order granting summary judgment and to enter a new and different order granting summary adjudication in favor of defendants on plaintiff's causes of action for age discrimination (third cause of action), retaliation (fourth cause of action), and wrongful termination in violation of public policy (fifth cause of action). The matter is remanded to the trial court for further proceedings on the first cause of action for employment discrimination (FEHA) and the second cause of action for failure to accommodate under FEHA. The parties are to bear their own costs on appeal.

**WOODS, Acting P. J.**

**We concur:**

**ZELON, J.**                                        **FEUER, J.**[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13